UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. ENJOLI JAMES GAFFNEY, Defendant. | No. 25-cr-00282-SLS-1 |

## REPORT AND RECOMMENDATION

Enjoli James Gaffney seeks to dismiss the impending charges based on alleged violations of the Speedy Trial Clause of the Sixth Amendment; Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*; prosecutorial vindictiveness; and government misconduct that warrants exercise of the supervisory power of this Court. *See* Def.'s Mot. to Dismiss 1, ECF No. 12. The undersigned recommends GRANTING Gaffney's motion based on a Sixth Amendment violation[1].

### I.   BACKGROUND

On June 25, 2025, Metropolitan Police Department officers approached and questioned a man about whether an open container contained alcohol. *See* Det. Hr'g. Tr. 4:12–16, ECF No. 14. Gaffney was seated about ten feet away from this container. *See id.* at 7:12–14. Officers claimed that they stopped Gaffney for questioning because they saw him push his hand into his pocket. *See* Mot. to Supp., 5, ECF No. 11. However, body-worn camera footage appears to contradict this testimony. *See id.*; Det. Hr'g. Tr. at 5:17–21. The officers then told Gaffney to show them his waistband and empty his pockets. *See* Det. Hr'g. Tr. at 5:17–24. Gaffney complied and officers

---

[1] The Court need not reach the other bases for dismissal given that the Sixth Amendment question is dispositive.

1

recovered contraband. *See* Mot. to Supp. at 8–10; Det. Hr'g. Tr. at 7:19–21. The officers then seized a firearm from Gaffney pursuant to a search incident to arrest. *See* Indictment, ECF No. 1.

The government filed a criminal complaint in the Superior Court of the District of Columbia. *See* Compl., 1–2, *United States v. Gaffney*, 2025-CF2-00719 (Sup. Ct. D.C. 2025). In it, the government charged Gaffney with unlawful possession of a firearm (based on a prior conviction), in violation of D.C. Code § 22-4503(a)(1); carrying a pistol without a license, in violation of D.C. Code § 22-4504(a)(1); and possession of a prohibited weapon, in violation of D.C. Code § 22-4514(a)(c)(1). *See id.*

On June 27, 2025, the D.C. Superior Court judge held a preliminary hearing and a pretrial detention hearing. *See Minute Entry*, Jun. 27, 2025, *United States v. Gaffney*, 2025-CF2-00719 (Sup. Ct. D.C. 2025). The judge ordered Gaffney detained pending trial. *See id.* The court scheduled the trial for October 2, 2025. *See Minute Entry*, Jul. 7, 2025, *United States v. Gaffney*, 2025-CF2-00719 (Sup. Ct. D.C. 2025). This trial date was within the statutorily set deadline of 100 days. *See* D.C. Code § 23-1322(h)(1).

On September 12, 2025, Gaffney filed a motion to suppress the search of his person. *See Def.'s Mot. to Supp.*, *United States v. Gaffney*, 2025-CF2-00719 (Sup. Ct. D.C. 2025). That same day, the government presented testimony before a federal grand jury and returned a federal indictment. *See* Indictment, ECF No. 1. The federal indictment re-charged violations of D.C. Code §§ 22-4503(a)(1) and 22-4514(a)(c)(1) and added a related violation of 18 U.S.C. § 922(g)(1). *See id.* On September 12, 2025, this Court issued a warrant for Gaffney's arrest. *See* Arrest Warrant, ECF No. 4.

On September 16, 2025, the government moved to dismiss the pending D.C. Superior Court case without prejudice. *See* Dismissal Praecipe, *United States v. Gaffney*, 2025-CF2-00719 (Sup.

Ct. D.C. 2025). The Superior Court judge granted this request and ordered Gaffney's release. *See Minute Entry*, Sept. 16, 2025, *United States v. Gaffney*, 2025-CF2-00719 (Sup. Ct. D.C. 2025). However, Gaffney remained at the D.C. jail pursuant to the federal arrest warrant. *See Minute Entry,* Sept. 16, 2025.

On September 16, 2025, the parties appeared before this Court for an initial appearance. The government then moved for Gaffney's continued pretrial detention. *Id.* On September 22, 2025, the Court began a detention hearing. *Id.* The Court continued resolution of the detention question to October 9, 2025. *See Minute Entry*, Oct. 7, 2025.

On September 26, 2025, Gaffney filed a motion to dismiss this case and a motion to suppress, repeating prior allegations from the Superior Court motion. *See* Mot. to Supp., ECF No. 11 and Mot. to Dismiss, ECF No. 12. The government opposed both motions. *See* Memo. in Opp., ECF No. 13 and ECF No. 15.

On October 9, 2025, the Court ordered Gaffney held pursuant to the Bail Reform Act. However, the Court informed Gaffney that the Court believed the government's actions violated his Sixth Amendment rights. In total, Gaffney has spent 112 days at the D.C. Jail in pretrial detention, all while attempting to exercise his right to a speedy trial.

## II.   LEGAL STANDARD

### A.   Constitutional Standard

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. Amend. VI. The right to a speedy trial is a fundamental right. It is not derived from statutory implementation, but rooted in "the very foundation of our English law heritage." *Klopfer v. State of N.C.*, 386 U.S. 213, 223 (1967). Indeed, it "is one of the most basic rights preserved by our Constitution." *Id.* at 226.

3

The Sixth Amendment speedy trial right has always been flexible, adapting to the circumstances of each case. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). There is "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Id.* at 523.

The Supreme Court has held that it "can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right." *Id.* at 530. Accordingly, courts approach speedy trial claims on an "ad hoc basis" using "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* This balancing test involves four factors: (1) length of delay, (2) justification for delay, (3) defendant's assertion of their right to a speedy trial, and (4) prejudice to the defendant. *See id.* The four factors "are related [] and must be considered together with such other circumstances as may be relevant." *Id.* at 533. But "none of the four factors" are "necessary or sufficient" to find a Sixth Amendment violation. *Id.*

States "are free to prescribe a reasonable [speedy trial] period consistent with constitutional standards." *Id.* at 523. However, the Sixth Amendment remains independent of these statutory deadlines. *See United States v. Mills*, 964 F.2d 1186, 1193 (D.C. Cir. 1992).

B.    Statutory Standard

The federal government codified the right to a speedy trial in the Speedy Trial Act. The Act requires that trial "commence within seventy days from the filing [of an indictment or information]." 18 U.S.C. § 3161(c)(1).

"[T]he Act is triggered only by arrests that are accompanied by the filing of a *federal* complaint against the defendant." *Mills,* 964 F.2d at 1189 (emphasis in original). The meaning of "arrest" for defendants prosecuted by the D.C. U.S. Attorney's Office was hotly contested during

the Act's adoption and in subsequent cases. This is because the D.C. U.S. Attorney's Office prosecutes both federal and local offenses. *See United States v. Knight*, 824 F.3d 1105, 1109 (D.C. Cir. 2016). This dual nature creates the potential for a prosecutor to "manipulate the order of arrests, so as to intentionally avoid the Act, without having to obtain the cooperation of an independent local prosecutor." *United States v. Robertson*, 810 F.2d 254, 258 (D.C. Cir. 1987). But courts were reluctant to believe that prosecutors might subject defendants civil liberties to a shell game.[2]

The D.C. Code requires that detained defendants "shall have trial of the case commence before the expiration of 100 days." D.C. Code § 23-1322(h)(1).

## III. DISCUSSION

### A. Length of Delay

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. But a numerical comparison does not end the

---

[2] The rationale for treating arrests arising from charges brought in D.C. Superior Court differently from those initiated in federal court have continued to evolve. *See United States v. Robertson*, 810 F.2d 254, 257–58 (D.C. Cir. 1987) (distinction supported by concerns about overcrowding federal court dockets and preventing federal intrusion into D.C. affairs beyond Congress's intent); *contra United States v. Mills*, 964 F.2d 1186, 1191 (D.C. Cir. 1992) (distinction necessary to support (1) increased political autonomy for the District and (2) federal disengagement from local court affairs).

But these justifications overlook the troubling reality on the ground, as witnessed in this case. Congress worried that the "U.S. Attorney [might] engage in [such] 'forum shopping', given his overlapping D.C. and federal jurisdiction," but warned that if this occurred, "Congress would have an obligation . . . to remedy the situation through future legislation." *See id.* at 1193 (quoting H.R. Rep. No. 1508 at 49, *reprinted in* 1974 U.S.C.C.A.N. at 7441). Thankfully, we do not have to wait for a statutory fix given the constitutional protections at play. Not to mention this review of the legislative history appears incomplete as noted by the dissent in *Mills*. *See id.* at 1202–03 (Sentelle, J., dissenting) (discussed below).

5

inquiry. That is "because of the imprecision of the right to speedy trial," and because "the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Id.* at 530–31. Courts must be wary of adopting a "mechanical approach to the application of basic constitutional guarantees." *United States v. Marion*, 404 U.S. 307, 333 (1971) (Douglas, J., concurring). Ultimately, whether "the length of delay [is] tolerable in a particular case depends largely on the reason for the delay." Brian P. Brooks, *A New Speedy Trial Standard for* Barker v. Wingo*: Reviving a Constitutional Remedy in an Age of Statutes*, 61 U. Chi. L. Rev. 587, 609 (1994) ("*New Speedy Trial*" hereinafter) (citing *Marion*, 404 U.S. at 333).

Although Gaffney's delay awaiting trial[3] is less than the delays addressed in other Sixth Amendment cases, the circumstances and reason for his delay are more egregious.

A primary consideration in evaluating the length of delay is the complexity of the alleged offense. *Barker*, 407 U.S. at 531. A "delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.; Compare Doggett v. United States*, 112 U.S. 2686, 2691 (1992) (finding an eight and a half year delay "between indictment and arrest clearly suffices to trigger the speedy trial inquiry" due to the complexity of the conspiracy charge and investigation) *with United States v. Strunk*, 467 F.2d 969, 971–72 (7th Cir. 1972) *reversed on other grounds by Strunk v. United States*, 412 U.S. 434 (1973) (finding the ten-month length of delay "critical [] in light of the simple nature of the case" involving a single count of transporting a stolen vehicle). Relatedly the government should be prepared to bring to trial offenses involving a single defendant more quickly than one with multiple defendants. *Barker*, 407 U.S. at 531.

---

[3] The parties agree that the ultimate length of delay until trial is unknown. Yet, it is undeniable that the federal court trial will occur after the original October 2, 2025, Superior Court trial date.

Here, we have a run-of-the-mill felon-in-possession case. By the government's own admission, this case required no investigation. *See* Memo. in Opp. at 10. The sum total of the government's evidence—"body-warn camera footage and a firearm found on the Defendant's person"—was collected over 100 days ago. *Id.* This is about the simplest case you can have in federal court; certainly, simpler than the crime of interstate transportation of a stolen vehicle in *Strunk*. *See supra*.

The government attempts to erase from history Gaffney's 82 days of detention at the D.C. jail on his nearly identical Superior Court case. *See* Memo. in Opp. at 8. That is possible for Speedy Trial Act computation; but impossible for constitutional computation. *See Mills*, 964 F.2d at 1193. In *Mills*, the court held that "an arrest in connection with *federal* charges triggers § 3161(b) of the Speedy Trial Act."[4] So, the court denied the defendants' Speedy Trial Act claims. But that is not the end of the story. The court remanded to the district court for consideration of defendants' Sixth Amendment claims. *See id.* Congress similarly recognized that these are two distinct rights. The Act explicitly states: "No provision of [the Act] shall be interpreted as a bar to any claim of denial of speedy trial as required by amendment VI of the Constitution." 18 U.S.C. § 3173.

---

[4] The legislative history of the Act animated the majority's decision to not apply the Act to similar Superior Court charges. *See Mills*, 964 F.2d at 1193. But the dissent in *Mills* provides a powerful rebuttal. The majority only cited "a snippet of legislative history focusing on the Act's application to Superior Court." *Id.* at 1202 (Sentelle, J., dissenting). Although "Congress intended that the Act not apply to cases pursued entirely in D.C. Superior Court," "this does not suggest, as the majority infers, that the U.S. Attorney need not abide by the Act when he moves a case from D.C. Superior to U.S. District Court." *Id.* "Turning directly to the Committee Report upon which [the majority relies], we acknowledge that Congress did discuss the possibility of 'forum shopping' by the U.S. Attorney to avoid the Act's restrictions and concluded that the benefits of the local exemption— such as respect for local courts and political institutions—justified the risk." *Id.* "[R]ead in context, the reference to forum shopping appears directed at the U.S. Attorney's opting *out* of federal court entirely and proceeding exclusively in local court, rather than by transferring cases from local *into* federal court without regard to the Act's time limits. Avoidance of the former sort would not harm local institutions or evidence any disrespect." *Id.* at 1202–03.

7

Gaffney's 82-day detention is entirely appropriate to consider when deciding his Sixth Amendment claim. The Sixth Amendment does not limit its protections only to "arrests." Instead, "it is either a formal indictment or information or else the *actual restraints* imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *Marion*, 404 U.S. at 320 (emphasis added). "[W]hen defendants are not incarcerated or subjected to other substantial restrictions on their liberty, a court should not weigh that time towards a claim under the Speedy Trial Clause." *United States v. Loud Hawk*, 474 U.S. 302, 312 (1986). The Supreme Court's decision to highlight what is actually happening to a detainee reflects a pragmatic approach, not hyper-technical. *See United States v. Black*, 918 F.3d 243, 257–58 (2d Cir. 2019). For example, "the period between a withdrawn indictment and a reindictment does not count [toward delay] for Sixth Amendment purposes" so long as the defendant is not still detained. *United States v. Jackson*, 549 F.3d 963, 971 (5th Cir. 2008).

The D.C. Superior Court's "release" after the government's dismissal of its case was meaningless. Gaffney was immediately federally "re-detained" without leaving the D.C. Jail. In fact, he continued to occupy the *same exact cell* during this supposed "release" and "re-detention." *See* Det. Hrn'g. (Oct. 9, 2025). Thus, Gaffney's "actual restraint" date back to his June 25, 2025 arrest.[5]

---

[5] Gaffney's restraint on liberty began when the United States arrested and detained him as part of the Superior Court proceedings. *See United States v. Gaffney*, 2025-CF2-00719 (Sup. Ct. D.C. 2025). The transfer of the case from local to federal court did not change the prosecuting sovereign. That distinction is important for speedy trial calculation.

The Supreme Court has held that "an arrest or indictment by one sovereign would not cause the speedy trial guarantee to become engaged as to possible subsequent indictments by another sovereign." *United States v. MacDonald*, 456 U.S. 1, 10 n.11 (1982) (finding no Sixth Amendment speedy trial violation). Thus, courts will not count time detained on a state court charge towards

To recap, we have a detention period exceeding 100 days stemming from a simple gun possession case, with no additional investigation, a single defendant, and likely only a few government trial witnesses. There was prosecutorial gamesmanship to restart the clock as the 100-day mark neared, which happened after the defense filed a motion to suppress. This was done by the prosecutors in the same office whose actions ensured Gaffney remained in the same jail cell. Given all of this, Gaffney has made an initial showing of presumptively prejudicial delay as to require consideration of the other *Barker* factors.

B.     Governmental Justifications for Delay

"The flag that all litigants seek to capture is the second factor, the reason for delay." *Loud Hawk*, 474 U.S. at 315. This factor asks, "whether the government or the criminal defendant is more to blame for [the] delay." *United States v. Rice*, 746 F.3d 1074, 1082 (D.C. Cir. 2014) (quoting *Doggett*, 505 U.S. at 651). "While a 'deliberate attempt to delay the trial in order to hamper the defense,' would be weighed heavily against the Government, a delay from 'overcrowded courts' . . . would be weighed 'less heavily.'" *Loud Hawk*, 474 U.S. at 315 (quoting *Barker*, 504 U.S. at 531); *see also Diggs v. United States*, 28 A.3d 585, 600 (D.C. 2011) (finding no violation where government delay was not "due to deliberate obstruction, procrastination, or

---

speedy trial time for a federal court charge. *See United States v. Dowdell*, 595 F.3d 50, 62 (1st Cir. 2010). This rule rests on the principle that "both the Federal Government and the States wield sovereign powers, and that is why our system of government is said to be one of 'dual sovereignty.'" *Gamble v. United States*, 587 U.S. 678, 689 (2019).

But the "anomalous position" the District of Columbia finds itself in exempts it from this general rule. *United States v. Shepard*, 515 F.2d 1324, 1338 (D.C. Cir. 1975). Unlike the states, the District of Columbia is not a separate sovereign from the federal government. As the D.C. Circuit has recognized in the Double Jeopardy context, "[a] person acquitted of a crime under District law may not be charged with that same crime under federal law in a successive prosecution (or vice versa); the *same sovereign* may not take a second bite at the apple." *United States v. Sumler*, 136 F.3d 188, 191 (D.C. Cir. 1998) (emphasis added). Thus, the "dual sovereignty" concerns animating *MacDonald* do not apply here.

9

gamesmanship on the part of the government," but instead difficulties locating witnesses, scheduling conflicts, medical emergencies, and competency issues). "Justice Brennan underscored the idea that 'deliberate governmental delay' is one of the most significant dangers addressed by the Sixth Amendment—so significant, in fact, that [Justice] Brennan characterized the prevention of such governmental misconduct not as an individual defendant's interest but as a 'common interest.'" *New Speedy Trial* at 608–09 (quoting *Dickey v. Florida*, 398 U.S. 30, 43 (1970) (Brennan, J., concurring)).

The government stopped its analysis at the first factor. *See* Memo. in Opp. at 9. As such the government offers no reason for its delay. But the Court, not the government, decides when the analysis ends.

It is worse to offer no justification for the delay rather than an unpersuasive one. *Cf. Doggett*, 505 U.S. at 657 ("[N]egligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, [but] it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun."). This is especially so given that "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *United States v. Sarvis*, 523 F.2d 1177, 1183 (D.C. Cir. 1975). It is not the Court's job to guess the reason for the delay.

In any case, the Court cannot think of a *legitimate* reason here.[6] The government conceded that the delay did not relate to "secur[ing] any additional evidence for federal prosecution." *See*

---

[6] To be clear: "flood[ing] the federal district court with [gun] cases," to make a show is not a legitimate reason. *See* Scott MacFarlane, *Acting U.S. Attorney for D.C. Ed Martin stirs controversy with prosecutor demotions, messages to "thugs"*, CBS News (Mar. 3, 2025), https://perma.cc/JF8U-AZY4.

10

Memo. in Opp. at 10. Its case-in-chief appears elementary. So why did the government park Gaffney's case in Superior Court for 82 days? The silence from the government is deafening.

Regardless of the reason, the delay here was entirely in the government's control. They unilaterally chose after 82 days to move the case to federal court. This was 82 days after they first chose to charge it in Superior Court. This "oppressive delay[] manufactured by the [government]" violates the Sixth Amendment. *Petition of Provoo*, 17 F.R.D. 183, 197 (D. Md. 1955); *cf. United States v. Hensley*, No. 18-cr-00270, 2024 WL 3673612, at *8 (D.D.C. Aug. 5, 2024) (refusing to fault government where it was not responsible for the delay).

The government's retort is that it has the power to transfer cases on a whim and at any time. *See* Memo. in Opp. at 6. It has flexed this power at an increased rate as of late. *See e.g.*, *United States v. Wright*, No. 25-cr-104 (D.D.C.) (in response to Superior Court judge dismissing Wright's case on the 100th day of his detention, the government recharged his case in federal court, thereby thwarting Wright's release and request for trial). The government's bravado is particularly concerning given the unprecedented times we are in.[7] But the government is wrong. Transferring cases may violate the Sixth Amendment. *See United States v. Lara*, 520 F.2d 460, 464 (D.C. Cir.

---

[7] Courts have long assumed by default that the government acts in good faith. *See United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926). This is based in "[t]he presumption of regularity." *Id.* This presumption holds that "in the absence of clear evidence to the contrary, courts presume that [government official] have properly discharged their official duties." *Id.* This thinking has applied to constitutional speedy trial analysis as well. *See Petition of Provoo*, 17 F.R.D. 183, 198 (D. Md. 1955); (quoting Constitutional Limitations (8th Ed., 1927), Vol. 1, p. 645, *et seq.*). But these are "unprecedented" times. *See United States v. Beidleman*, No. 25-cr-270, 2025 WL 2803850, at *1 (D.D.C. Oct. 1, 2025) (cataloging litany of missteps and prejudicial conduct by government during the federal takeover of Washington, D.C.). Indeed, "the irregular is now the regular." *United States v Stewart*, No. 25-mj-225, 2025 WL 2754480, at *1 (D.D.C. Sept. 29, 2025) (citing *Fed. Educ. Ass'n v. Trump*, No. 25-1362, 2025 WL 2355747, at *11 (D.D.C. Aug. 14, 2025) (Judge Friedman, a renowned former prosecutor and judge, recently collected cases addressing this topic, and concluded that "[i]n just six months, the President of the United States may have forfeited the right to [ ] a presumption of regularity.")).

1975). In *Lara*, the government engaged in "court shopping" by re-charging a case in Florida after the court dismissed the case in Washington, D.C. *See id.* The transfer of the case caused an undue delay, violating defendants' constitutional speedy trial right. *See id.* The court warned that "[w]henever the Government's action at any stage of the proceeding indicates bad faith, neglect, or a purpose to secure delay itself or some other procedural advantage, the resulting [speedy trial] delay is not justified." *Id.* at 464 (quoting *United States v. Bishton*, 463 F.2d 887, 890 (D.C. Cir. 1972)).

The government's actions appear to be neglect at best: they failed to re-charge Gaffney in federal court until 82 days after their initial decision to charge him in Superior Court. *See United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (negligent delay in carrying out competency exam was a result of "institutional dysfunction" rather than "deliberate wrongdoing or bad faith."). And bad faith at worst: they are making a show of taking cases federally and/or delaying adjudication of a likely successful motion to suppress. *See Petition of Provoo*, 17 F.R.D. at 202 (court finding prosecutors' decision to charge case in questionable venue "deliberate," causing "as much oppressive delay and damage to the defendant as it would have cause if it had been made in bad faith."). Either way, this violates the Sixth Amendment.

On the flip side, the government cannot blame Gaffney for *any* delay. *Cf. United States v. Goss*, 646 F. Supp. 2d 137, 141–42 (D.D.C. 2009) (defendant's withdrawal of guilty plea, changing attorneys, and requesting more time to prepare for hearings all undermine any claim that government was to blame for delay). Gaffney was prepared for his October 2, 2025, trial date.

Accordingly, this factor is squarely in Gaffney's favor.

C.  Defendant's Assertion of Right to Speedy Trial

Throughout the proceedings in Superior Court, Gaffney asserted his right to a speedy trial. Evidence of this invocation lies in Gaffney's rejection of a plea offer and request to set a trial date in October. *See Minute Entry*, Jul. 7, 2025, *United States v. Gaffney*, 2025-CF2-00719 (Sup. Ct. D.C. 2025). As soon as the government transferred Gaffney's case to District Court, he again invoked his right to a speedy trial. *See* Def. Mot. to Dismiss at 4. Such continual assertion of the speedy trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *See Barker*, 407 U.S. at 531–32. Accordingly, this factor is squarely in Gaffney's favor.

D.  Prejudice to the Defendant

In assessing prejudice to the defendant, one must consider the interests the speedy trial right was designed to protect, including "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* at 532. Notably, however, defendants are "not required to show prejudice in fact. Prejudice may arise from the restraint on liberty for an unreasonable length of time before a conviction, from the harassment of criminal prosecution and anxiety resulting therefrom, and from the possible loss of witnesses by reason of faded memory and inability to locate them." *Petition of Provoo*, 17 F.R.D. at 198.

"[P]reventing government abuse of the power of imprisonment is often thought to be at the core of the [Sixth Amendment's] speedy trial guarantee." *New Speedy Trial* at 596–97. Indisputably, the "time spent in jail awaiting trial has a detrimental impact on the individual" and "[i]mposing those consequences on anyone who has not yet been convicted is serious." *Barker*, 407 U.S. at 532–33. "And while it might be argued that a person already in prison would be less

13

likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large." *United States v. Brown*, 520 F.2d 1106, 1112 (D.C. Cir. 1975). "Though we cannot measure in an accurate manner the degree of personal prejudice to [a defendant], we cannot ignore it," because "a man isolated in prison is powerless to exert his own investigative efforts" and "mitigate these errosive [sic] effects of the passage of time." *Id.*

Gaffney has endured months of pretrial detention at the D.C. jail, which undoubtedly caused him harm. *See United States v. Akers*, No. 11-cr-313, 2025 WL 2611703, at *3 (D.D.C. Sept. 10, 2025).[8] Among other harms, the longer Gaffney stays detained pretrial, the more likely he is to succumb to a plea given that "[p]retrial detention frequently spurs people to plead guilty, if only to remove themselves from dangerous jail conditions." *See* Nazish Dholakia, *How The Criminal Legal System Coerces People into Pleading Guilty*, Vera Institute of Justice (Apr. 4, 2024), https://perma.cc/JK3Z-QCCZ. Such actions would be at odds with Gaffney's unwavering stance that he wants a speedy trial. Accordingly, this factor is also in Gaffney's favor.

---

[8] The harms of pretrial detention are magnified given the current conditions at the D.C. jail. *See Akers*, 2025 WL 2611703 (citing *New Report on Jail Confirms Unsafe Conditions and Rising Deaths, Calls for Immediate Action*, Council for Court Excellence (May 28, 2025), https://perma.cc/4SPB-XD9U ("This audit offers the most comprehensive review to date of facility operations, documenting a crisis marked by rising deaths, structural decay, staff shortages, and inadequate medical and behavioral health care.")); Washington Post Editorial Board, *D.C.'s jail is a disgrace. Still.*, The Washington Post (June 4, 2025), https://perma.cc/LZ46-AUNQ ("The rate of death at the D.C. jail is three times the average of U.S. jails. For overdose deaths, the rate is 10 times the national average. The facility — especially its main building that opened in 1976 — is ridden with cockroaches, mice, and mold. In the span of just a year, an audit recorded almost 1,600 maintenance reports posing immediate health or safety risks. Most have to do with plumbing issues, which at times have resulted in "toilet water commingled with feces spewing onto residents and their living areas. Inmates are often subjected to extreme heat or cold due to poor climate-control systems.").

E.    Application of the Factors

All four factors are in Gaffney's favor. As such, the appropriate consequence is dismissal with prejudice. Any alternative remedy, including dismissal without prejudice, would rubberstamp prosecutorial gamesmanship that unduly burdens presumed innocent defendants and society as a whole. *See New Speedy Trial* at 601 (discussing how speedy trials serve the best interests of both defendants and society). The House Committee on the Judiciary agrees. They stated that "the only effective remedy for denial of speedy trial is absolute and complete discharge." *United States v. Taylor*, 487 U.S. 326, 353 n.5 (1988) (quoting H.R. Rep. No. 93-1508, p. 37 (1974), U.S. Code Cong. & Admin. News 1974, p. 7430). They further stated that if the "prosecution is free to commence prosecution again for the same offense, subject only to the running of the statute of limitations, the right to speedy trial is largely meaningless." *Id.*

The government suggests that the appropriate remedy for a speedy trial violation would instead be release from custody. Memo. in Opp. at 10. But this would fail to cure "an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial[,] . . . uncertainties that a prompt trial removes."[9] *See Strunk*, 412 U.S. at 439. Moreover, the government had the chance at the initial appearance in federal court to not seek re-detention. But it did not then. And is too late to do so now. Dismissal with prejudice, which is

---

[9] The government laments that dismissal impacts its "opportunity to fully litigate these [suppression] issues." Mot. in Opp. at 15. This argument is tone-deaf. First, the government is not entitled to litigate *Gaffney*'s Fourth Amendment rights. *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 260 (1990) ("The Fourth Amendment's drafting history shows that its purpose was to protect the people of the United States against arbitrary action by their own Government."). Second, any harm to the government is self-inflicted. The government could have litigated this question in Superior Court, with the same evidence, witnesses, defendant, prosecutors, and standards of law. But the government chose not to.

"not unique in the application of constitutional standards," remains the only appropriate remedy here. *Id.*

    F.    <u>If not now, then when?</u>

The Sixth Amendment right to a speedy trial is not a subordinate right. Yet, this right does not enjoy the same abundance of caselaw as the Fourth Amendment. Perhaps this is because courts have found it easier to apply the Speedy Trial Act which provides a clear numerical baseline for a violation. *See New Speedy Trial* at 587. This dearth of caselaw is particularly striking considering how far back the right to a speedy trial dates. "Its first articulation in modern jurisprudence appears to have been made in Magna Carta (1215)." *Klopfer*, 386 U.S. at 223.

Despite this, prior court rulings have at times "portrayed the right as somehow less fundamental and more contingent than other procedural safeguards in the Bill of Rights. This treatment reflects the orthodoxy that the right to a speedy trial is the one criminal procedural guarantee in the Constitution that must be limited by the countervailing demands of 'public justice.'" *See New Speedy Trial* at 587. But any assertion that a defendant's interest in the right to a speedy trial is opposed to society's interest is unfounded. In fact, it is the opposite. The public has a vested interest in effective prosecution, which "does not consist of convicting all defendants through any means possible." *Id.* at 598. Especially in these unprecedented times, courts must be vigilant that the rule of law acts as a check against the government putting prosecutions above all else. *See Beidleman*, 2025 WL 2803850, at *1 (noting that "prosecutors have [recently] rushed to charge cases before properly investigating them").

This court's rejection of local-to-federal case transfers is limited to a narrow band of cases where: the federal and state prosecutor are one in the same; that single prosecutor's office decided to charge locally and then waited months until re-charging federally; there is no legitimate reason

16

for the delay created by the government; the defendant is detained during the initial local case and then again in the federal case; and the crime charged is as basic as can be. On the other hand, the government's preferred alternative is one with no limits on transfers. Any and all D.C. defendants are subject to up to 100 days of detention in purgatory. After that, the government can effectuate a federal arrest, which begins—not continues—the constitutional speedy trial clock. The government's paradigm places D.C. defendants' constitutional speedy trial clock at a 100-day deficit as compared to all other Americans. That is unacceptable. *Cf. United States v. Brown*, 483 F.2d 1314, 1318 (D.C. Cir. 1973) (when applying federal rules, D.C. defendants in federal court should not be treated more harshly than defendants in other federal courts). You need look no further than Enjoli James Gaffney to see the cruelty of this paradigm. The harm to him is compounded every minute he remains charged and incarcerated.

## IV.   CONCLUSION[10]

The government's actions have awakened the Sixth Amendment from its hibernation.


Date: October 14, 2025

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

---

[10] The parties are advised that, under the provisions of Local Rule 72.3(b), any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).