UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 25-CR-282 (SLS) |
| ENJOLI GAFFNEY | : | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S
OBJECTION TO REPORT AND RECOMMENDATION**

Pending before this Honorable Court is Mr. Gaffney's Motion to Dismiss Indictment, ECF 12, seeking dismissal based on violations of Mr. Gaffney's Fifth and Sixth Amendment rights. The Court referred the motion to the Honorable Zia M. Faruqi, who issued a Report and Recommendation on October 14, 2025, recommending that the Court grant the motion and dismiss the Indictment with prejudice based on the Sixth Amendment violation. ECF 16. The government filed an objection to the Report and Recommendation on October 20, 2025. ECF 19. In response, Mr. Gaffney respectfully submits the following.[1]

The Supreme Court has set forth the appropriate framework for determining whether the government has violated a defendant's Sixth Amendment right to a speedy trial, finding that a fact-based balancing test—approaching each case on an ad hoc basis—is appropriate. *Barker v. Wingo*, 407 U.S. 538, 530 (1972). The Court identified four factors for courts to consider: "Length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id*. Judge Faruqi applied this framework and methodically reviewed

---

[1] Because Judge Faruqi addressed only the Sixth Amendment violation, the government did not address the remaining arguments in the Motion to Dismiss. For this reason, counsel does not re-raise them here, but Mr. Gaffney maintains the Indictment also should be dismissed for the additional reasons raised in the Motion to Dismiss.

these factors, concluding that the specific facts of this case demonstrate that each factor weighs in favor of finding a speedy trial violation and dismissing the Indictment. Although Judge Faruqui concluded by summarizing the narrow facts at issue here, ECF 16 at 16, he did not, as the government claims, ECF 19 at 5, craft any new rule.

Before addressing the *Barker* factors, the government registers several general complaints about the result of the weighing of the factors here. ECF 19 at 5-13. These complaints, however, do not alter the analysis of the *Baker* factors.

***First***, the government complains that the delay here cannot be unconstitutional because it is not "unusual," arguing (without citation) that "delay is not measured with reference to when a Defendant might have had a trial as compared to when a Defendant does have a trial." ECF 19 at 5. To the contrary, the Court must consider when the defendant was arrested and when a trial may have occurred absent the delays caused by the government in order to assess whether an unnecessary delay has occurred. The Court must look to the individual facts and not assess the case on a mechanical timeline.

To trigger inquiry into a constitutional speedy trial claim, "an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). There is no set term that marks that threshold, although the Supreme Court has indicated that delays that approach one year cross the threshold, *id.* at 652 n. 1, and the D.C. Circuit has suggested that delays of six months trigger further inquiry, *United States v Jones*, 524 F.2d 834, 849 (D.C. Cir. 1975).

Here, the government asks the Court to focus on the total post-arrest delay, arguing that the delay is not out of the ordinary or unusual, while at the same time acknowledging that "the government usually identifies case for transfer earlier than it did here[.]" ECF 19 at 12, 16. By the government's own admission, the delay here was more than its own "ordinary." Moreover, the unusual and out of the ordinary delay here is the delay from that has resulted from the government decision to allow the charge to languish in Superior Court—federal court cases do not ordinarily languish in Superior Court before indictment.

The government admits that it regularly thwarts the federal Speedy Trial Act by identifying a Superior Court complaint that should be transferred to federal court but waiting twice as long the 30-days the Speedy Trial Act would allow (an average of 67 days) before obtaining a federal indictment. *Id.* at 12. Regularly violating the right to a speedy trial does not turn unusual delays into constitutionally permissible "ordinary" delays.

The government argues that Mr. Gaffney's case could have taken longer to process if the government had brought the case in federal court in the first instance and that other cases have taken longer. What could have happened here and what has happened in other cases, however, does not change what did happen. Here, the government filed charges in Superior Court and trial was scheduled for October 2, 2025. The government thwarted that trial date and caused prejudicial delay by waiting 82 days after Mr. Gaffney's arrest—while he was detained—and then obtaining an indictment in federal court, causing any trial in this matter to be delayed further.

*Second*, the government complains that if the case had remained in Superior Court, the remedy had it failed to bring Mr. Gaffney to trial by October 2, 2025 (100 days from his initial detention) would have been his release, not dismissal. Again, what could have happened does not

3

change what did happen. The government's argument also assumes that if it had sought a continuance of the October 2, 2025 trial date, the Superior Court would have granted the continuance and released Mr. Gaffney, but the Superior Court had another option: deny the continuance and move forward with trial. What would have happened is not determinable because rather than simply violating the provisions of the D.C. Code bail statute, D.C. Code § 23-1322 (requiring trial for detained defendants within 100 days of initial detention), the government moved the case to federal court, restarting the entire process, requiring new appointed defense counsel, causing a lengthier delay, and violating Mr. Gaffney's constitutional right to a speedy trial. Absent some check on the government's exercise of its authority to prosecute in federal and local courts, the government could park every potential federal case in Superior Court and build-in 100 days of detention with no trial before starting the process in federal court. The Sixth Amendment is the check against such abuse of authority.

*Third*, reframing its argument that the delay here was not "unusual" and again arguing that "at most" Mr. Gaffney is entitled to release, the government complains that granting the motion to dismiss affords Mr. Gaffney relief "merely" because he was detained in Superior Court and federal court. ECF 19 at 9. That is an oversimplification of Judge Faruqui's 17-page analysis of the facts of this case. Dismissal is appropriate here not simply because Mr. Gaffney's case was moved from Superior Court to federal court, but because the circumstances of his case demonstrate that the decision to do so and the delayed timing of doings so at the cost of Mr. Gaffney's Fifth Amendment right to due process and Sixth Amendment right to speedy trial.

*Fourth*, the government complains that Judge Faruqui characterizes its behavior as "prosecutorial gamesmanship" and argues that it gained no advantage. To date, the government has offered no evidence that the transfer of this cases was not prosecutorial gamesmanship. As

4

discussed below, the government continues to refuse to explain its decision or offer evidence that explains the delay. The absence of explanation from the government is itself evidence of gamesmanship.

The facts the government does offer also support a finding of prosecutorial gamesmanship. The government now acknowledges that "this case was identified as a potential candidate for transfer to District Court on approximately July 10, 2025." ECF 19 at 12. This acknowledgment—made for the first time in the government's response the Report and Recommendation—supports Judge Faruqui's recommendation. Mr. Gaffney was arrested on June 25, 2025. The government claims it had an intent to charge Mr. Gaffney in federal court beginning approximately two weeks later, on July 10, 2025, but waited until September 5, 2025, to present the case to a federal grand jury and did not obtain an indictment until September 12, 2025. The government states that "the grand jury proceeding and vote extend[ed] past the first day of presentation," delaying the return of the indictment for a week until the same grand jury sat again. ECF 19 at 12. The government has produced the transcript of the grand jury proceedings. The government presented the testimony of one police officer and five photo exhibits (screenshots from body-worn camera videos). The entire proceeding is recorded in a 14-pages transcript. *See* Attachment 1. The government offers no explanation for why the presentation of evidence from a single witness to obtain a one count indictment was not attempted before September 5, 2025, or why it was not completed on that date.

According to the government's representation that it "identified" this case for transfer approximately two weeks after Mr. Gaffney's arrest, while Mr. Gaffney was detained waiting for a trial in Superior Court that the government knew it had no intention of pursuing, the government intentionally waited more than twice as long as the Speedy Trial Act affords for the

5

return of a federal indictment to begin its presentation to the grand jury. *See* 18 U.S.C. § 3161(b) (requiring return of indictment within 30 days of arrest). These facts support dismissal with prejudice. The government's retort to this would no doubt be that the Speedy Trial Act was not implicated because the complaint was filed in Superior Court. That, of course, is exactly the gamesmanship and shell game that supports dismissal: manipulating the D.C. Code provisions (permitting 90 days of detention before indictment and 100 days before trial of a detained defendant) and federal provisions (requiring indictment within 30 days) to delay and gain the advantage of time. The advantage to the government is obvious: the government avoided a trial on October 2, 2025, and more importantly, avoided resolution of Mr. Gaffney's meritorious motion to suppress, while Mr. Gaffney continues to sit in a cell at the D.C. jail without trial.

***Fifth***, the government's final complaint is that D.C. defendants have greater speedy trial rights than defendants in other jurisdictions because a D.C. defendant cannot be prosecuted in both Superior Court and federal court, and therefore, the speedy trial time is generally assessed beginning at arrest. ECF 19 at 13-14. The government does not indicate how that fact should affect the Court's analysis here, but notes that the D.C. Circuit has held that a constitutional due process violation could occur if the government deliberately charges a case in Superior Court to gain time to gather evidence to prosecute in federal court. *Id.* at 14. The government claims that it gained no additional evidence as a result of the delay here. That maybe so, but the government did gain the ongoing detention of Mr. Gaffney and a delay of the determination of the suppression motion. From the date of Mr. Gaffney's arrest on June 25, 2025, the government had all it needed—one Metropolitan Police Department officer and five screenshots from body-worn camera videos—to obtain an indictment and proceed to trial. Nonetheless, the government

6

delayed and fails to explain the delay, and the delay has prejudiced Mr. Gaffney by causing anxiety and extended pretrial detention. The facts support dismissal with prejudice.

Turning to the *Barker* factors as the law requires, the government's arguments fare no better. The Court should adopted Judge Faruqui's analysis of these factors and the conclusion that dismissal with prejudice is appropriate. The government offers no facts or explanations that support a different result.

1. ***Length of Delay.***

The length of the delay here is ongoing. Mr. Gaffney was scheduled for trial in Superior Court on October 2, 2025. The government thwarted that trial, and no new date has been set. The delay between Mr. Gaffney's arrest and detention and the indictment in this case was 82 days. The delay between his arrest and trial is four months and counting.[2]

The government argues that the length of the delay here was not unusual enough to trigger consideration of the remaining factors, suggesting that there is some numerical formula for determining when a delay is sufficient to trigger further inquiry, but there is no such precise formula. Instead, the Court must look to the particular circumstances of the case. *Barker*, 407 U.S. at 530. Judge Faruqui examined these circumstances and found that the simplicity of the

---

[2] Curiously, although the government argues on page 13 of its filing that D.C. defendants have greater speedy trial rights because "their Sixth Amendment clocks more often start running upon arrest," in a footnote on page 15, the government suggests that Judge Faruqui was wrong to "assume" Mr. Gaffney's arrest triggered his Sixth Amendment right to a speedy trial and that somehow the D.C. Circuit's decision in *United States v. Mills*, 964 F.2d 1186, 1193 (D.C. Cir. 1992) (*en banc*), left that issue in doubt. In fact, *Mills* addressed the Speedy Trial Act and found that it was not triggered by an arrest related to a Superior Court charge but then distinguished the constitutional right to a speedy trial, noting it is triggered by arrest and detention. *Id*. In the portion of the panel decision that the *Mills en banc* decision left intact, the D.C. Circuit specifically acknowledged that D.C.'s unified sovereignty forecloses any dual sovereignty argument that an arrest and detention for an offense charged in Superior Court does not trigger the Sixth Amendment for purposes of the same charge brought in federal court. *See United States v. Mills*, 925 F.2d 455, 465 (D.C. Cir. 1991), *vacated on other grounds*, *Mills*, 964 F.2d 1186.

government's case along with the prosecutorial gamesmanship of waiting until near the 100-day mark (and Superior Court trial date) to obtain a federal indictment demonstrated that—in context—the length of delay triggered an evaluation of the remaining *Barker* factors.

The evidence produced by the government in discovery supports this finding. As noted above, the government presented its case to the grand jury through five photographs (screenshots from police body-worn cameras) and one police officer, whose testimony is reported in a 14-page transcript, suggesting less than one half hour of testimony. The allegations are straight forward. The police encounter with Mr. Gaffney lasted eight minutes before police allegedly recovered a firearm. The entire encounter was recorded on the body-worn cameras of the four officers who were on the scene. The government argues, "It takes time to present a case to a grand jury. A prosecutor must review evidence, prepare exhibits, and identify witnesses." ECF 19 at 12. Reviewing eight minutes of video, identifying which of the four officers to call, and obtaining screenshots from the videos does not take months.

2. *Reason for Delay.*

The government acknowledges that it is responsible for the delay but nonetheless attempts to shift blame to Mr. Gaffney. ECF 19 at 17-18. The government purports to accept responsibility for delaying Mr. Gaffney's trial by transferring the charge to federal court, but suggests that the delays since the transfer, based on the government's detention motion and Mr. Gaffney's motion to suppress, are not the result of the government's conduct. *Id.* at 18. That argument ignores reality. Mr. Gaffney's trial was scheduled for October 2, 2025. Mr. Gaffney was prepared to move forward on that date and in September 2025, filed a motion to suppress that the Superior Court would have heard on that date. The delays resulting from the transfer—including the need to relitigate detention and the need to refile the suppression motion and

8

reschedule dates—are the result of the government's conduct. The government cannot shift blame because its conduct forced the defense to oppose further detention and refile the suppression motion. The delay is solely attributable to the government.

The circumstances of this single-count gun possession case do not explain the government's delay. The government's opposition to Mr. Gaffney's motion to dismiss offered no reason for the delay. Judge Faruqui noted the absence of an explanation from the government and made a factual finding that there was no legitimate reason for the delay. ECF 16 at 10. After receiving the Report and Recommendation, this Court specifically ordered the government to "explain the reason for dismissing this case in D.C. Superior Court and re-filing for the same conduct in this Court." Minute Order (Oct. 16, 2025). In response, the government offers only the "the factors that it routinely considers when making prosecutorial decisions, including the severity of the Defendant's conduct, the Defendant's criminal records, and enforcement priorities." ECF 19 at 24. Apart from those broad generalizations applicable in any case, the government refuses to respond to the Court's Minute Order, citing "the principle of party presentation, work-product privilege, and executive discretion." *Id.* at 25 (footnotes omitted). When a pretrial delay occurs, the burden is on the government to justify the delay. *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997); *United States v. Fernandes*, 618 F. Supp. 2d 62, 68 (D.D.C. 2009). The government may choose to hide behind purported privileges, but doing so does not relieve it of its burden or excuse its failures. The failure to offer a legitimate explanation for the delay should be weighed heavily against the government.

As Judge Faruqui found, neither the desire to flood federal courts with gun cases, nor "because we can," is a valid explanation for the government's actions here. ECF 16 at 10 n.6, 11. Judge Faruqui found that the government's actions were "neglect at best" and "bad faith at

worst." *Id.* at 12. The government's continuing refusal to submit an explanation supports a finding of the later. Whether the government moved Mr. Gaffney's case to make a show of taking cases federally or to delay the hearing on his motion to suppress, the government's decision was made in bad faith. If, as Mr. Gaffney suspects, the government did so simply to delay the inevitable suppression of evidence based on the violations of Mr. Gaffney's Fourth Amendment rights, the government intentionally violated Mr. Gaffney's Sixth Amendment right.

A review of the first three minutes of the videos from the police officers' body-worn cameras confirms that the evidence in this case was unlawfully seized and should be suppressed. *See* Motion to Suppress Tangible Evidence, ECF 11, Exhibits 3, 5, 6, & 7.[3] Without probable cause or a reasonable articulable suspicion, a police officer refused to accept Mr. Gaffney statement that he had no weapons and directed Mr. Gaffney to reveal whether he had anything in his waistband. The officer's actions (including shining a bright flashlight toward the waistband area he was directing Mr. Gaffney to reveal) and the actions of the other police officers (who were stopping and searching others nearby) conveyed the message that compliance was mandatory and that the officer was not asking Mr. Gaffney to reveal his waistband but instructing him do so. *Compare United States v. Gamble*, 77 F.4th 1041, 1044 (D.C. Cir. 2023) (Fourth Amendment violated when officer asked, "Ain't got no gun on you, man?" and then not satisfied with the defendant's "no" response, instructed the defendant, "Let me see your waistband," conveying the message that compliance was obligatory) *with United States v. Gross*,

---

[3] On September 30, 2025, these exhibits were provided to the Court via a flash drive delivered to the clerk's office and to government counsel via USAfx.

784 F.3d 784 (D.C. Cir. 2015) (no Fourth Amendment violation when officer asked, "Can I see your waistband?" but did not convey that compliance was mandatory).[4]

### 3. *Assertion of Right.*

The government concedes that Mr. Gaffney invoked his right to a speedy trial at the earliest moment in this case. This factor weighs in favor of dismissal.

### 4. *Prejudice to Defendant.*

In *Barker*, the Court noted three types of prejudice from unreasonable pretrial delays: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [defendant's] defense will be impaired[.]" *Barker*, 407 U.S. at 532. In *Doggett*, the government asked the Court to find that the effect on the fair adjudication of a case is not significantly protected by the Sixth Amendment. 505 U.S. at 654-55. The Court ruled that such an argument "asked [the Court], in effect to read part of *Barker* right out of the law[.]" *Id.* Here, the government attempts "in effect" to write the remaining two types of prejudice out of *Barker*, arguing that because Mr. Gaffney can point to no prejudice to his defense, the prejudice was insufficient for this factor to support a Sixth Amendment violation. As the Court in *Doggett* noted, "Once triggered by arrest, indictment, or other official accusation . . . the speedy trial enquiry must weigh the effect of delay on the accused's defense just as it has to weigh any other form of prejudice that *Barker* recognized." 505 U.S. at 655. Thus, pretrial incarceration and the anxiety and concern of the accused are forms of prejudice caused by delay that are just as important as impairment to the defense.

---

[4]The government also may have transferred the case to federal court to avoid D.C. case law. *See Golden v. United States*, 248 A.3d 925 (D.C.C.A. 2021) (defendant seized when "four police officers in two unmarked SUVs pulled up beside him and asked if he had any weapons but refused to accept that answer and pressed him to prove he had no gun by exposing his waist.").

11

The government's claim that Mr. Gaffney has not experienced anxiety and concern because he has not specifically stated so, is nonsense. Mr. Gaffney was incarcerated at the D.C. jail for two and half months, concerned about his case and preparing for trial. He was then brought to federal court without explanation only to learn that he would be appointed new counsel and not have trial as scheduled on October 2, 2025, and that he would need to wait to resolve his case while continuing to be detained. He remains incarcerated with his life disrupted and even now continues to struggle to comprehend why he did not have trial on October 2, 2025. The stress of such circumstances is obvious. *See United States v. Brown*, 520 F.2d 1106, 1112 (D.C. Cir. 1975) ("Though we cannot measure in an accurate manner the degree of personal prejudice to [a defendant], we cannot ignore it," because "a man isolated in prison is powerless to exert his own investigative efforts" and "mitigate these e[]rosive effects of the passage of time."); *see also United States v. Taylor*, 487 U.S. 326, 340 (1988) ("The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty," for "'whether he is free on bail or not, . . . [the delay] may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'" (quoting *Barker v. Wingo,* 407 U.S. 514, 537 (1972) (White, J., concurring) (quoting *United States v. Marion,* 404 U.S. 307, 320 (1971))).

The government also argues, "Defendant's pretrial detention has not been 'oppressive.'" ECF 19 at 21. Mr. Gaffney invites government counsel to spend a night at the D.C. jail and respectfully submits that no human who does would define the conditions there as anything but

oppressive. *See* ECF 16 at 14 n.8 (citing reports of jail conditions).[5] Moreover, pretrial detention is not, as the government suggests, less oppressive because it is warranted under the relevant bail statute. Lastly, the government's suggestion that the delay is less than 100 days of pretrial detention is not accurate—the delay and detention are ongoing and now number 119 days.

## **Conclusion**

As Judge Faruqui found, the *Barker* factors all weigh against the government and support dismissal of the indictment with prejudice. The government, nonetheless, argues that the remedy should not be dismissal with prejudice. The problem with the government's argument is that the failure to impose a sanction with teeth for the violation of the Sixth Amendment at issue here would result in repeated violations of the Sixth Amendment. In the context of the Speedy Trial Act, the Supreme Court has noted, "Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *Taylor*, 487 U.S. at 342. Those factors, however, will not deter the government under the circumstances at issue here. The government can re-indict a single-count gun case like this in less than an hour. With a five-year statute of limitations for violations of 18 U.S.C. § 922(g), *see* 18 U.S.C. § 3282, absent greater sanctions, dismissal without prejudice would have no deterrent effect.

Also, the government is unrepentant in its use of Superior Court to delay bringing federal charges and delay trial. If the Court accepts the argument that a nearly 100-day delay is not sufficient to warrant sanctions, the government will have no incentive to discontinue the same conduct in other matters. This is not the first case in which the government has allowed a case to

---

[5] In addition to regular flooding with sewage, the facility is infested with rats and cockroaches. One former client of undersigned counsel recently reported seeing cockroaches carrying a rat through his cell.

sit in Superior Court for months before bringing charges in this court. *See, e.g., United States v. Wright*, No. 25-cr-104 (ABJ) (defendant arrested and charged in Superior Court on November 19, 2024; Superior Court denied a government motion continue a March 10, 2025 trial date and dismissed for want of prosecution; a federal indictment was returned on April 10, 2025); *United States v. Kevin Hopkins*, 25-cr-118 (JMC) (defendant arrested and detained in Superior Court on November 20, 2024; trial set in Superior Court for May 5, 2025; federal indictment returned on April 24, 2025); *United States v. Damarqus Moore*, 25-cr-115 (SLS) (defendant arrested and charged in Superior Court on January 13, 2025; motions hearing set in Superior Court for August 15, 2025; federal indictment returned April 23, 2025); *United States v. Ashaad Turner*, 25-cr-129 (SLS) (defendant arrested and charged in Superior Court on August 25, 2024; federal indictment returned May 1, 2025); *United States v. Nelson Bryant*, 25-cr-097 (JDB) (defendant arrested and charged in Superior Court on June 10, 2024, and trial was later scheduled for March 31, 2025 but the government moved to continue to May 20, 2025; a federal indictment returned on April 8, 2025); *cf. United States v. Dremale Vanterpoole*, 25-cr-138 (RJL) (government moved case to federal court after defendant released in Superior Court as a sanction for discovery violations that delayed trial, and while a motion to dismiss based on government misconduct was pending in Superior Court).[6]

This case assuredly will not be the last in which the government gains a litigation advantage – or put another way – avoids an impending disadvantage at the defendant's expense if this Court accepts the government's argument that a delay of approximately 100 days for an

---

[6] In *Vanterpoole*, after an indictment was returned in federal court, the Superior Court dismissed the indictment before it *with prejudice*. A motion to dismiss the federal indictment based on what occurred in Superior Court is now pending before Judge Leon.

incarcerated defendant is not a constitutional violation warranting dismissal with prejudice. To the contrary, the government will be emboldened to let cases sit in Superior Court—particularly when a defendant is detained and seeking trial—for as long as possible under the applicable D.C. statutes (100 days) – and then dismiss that case and restart the process in federal court thereby disregarding any interest in or right to a speedy trial. The Court should impose the only consequence with teeth in this context: dismissal with prejudice. As the Supreme Court recognized: "It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." *Taylor*, 487 U.S. at 342.

        Respectfully submitted,

        A. J. KRAMER
        FEDERAL PUBLIC DEFENDER

            /s/
        _____
        MARY MANNING PETRAS
        Assistant Federal Public Defender
        625 Indiana Avenue, N.W., Suite 550
        Washington, D.C. 20004
        (202) 208-7500